IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARCELLUS THOMAS,                )
                                 )
            Petitioner,           )
                                 )       1:11CV1007
       v.                        )       1:08CR3-1
                                 )
UNITED STATES OF AMERICA,        )
                                 )
            Respondent.          )

## RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Petitioner Marcellus Thomas, a federal prisoner, has brought a Motion (Docket Entry 151) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.* Petitioner was indicted on thirteen counts with violating 26 U.S.C. § 7206(2) by aiding and assisting in the preparation of false federal income tax returns. (Docket Entry 1.) After a jury trial, Petitioner was found guilty of Counts Two through Thirteen (Docket Entry 59) and Count One was ultimately dismissed (9/23/08 Minute Entry). After an unsuccessful appeal, *United States v. Thomas*, 391 Fed. App'x 321 (4th Cir. 2010), Petitioner brought the instant Motion. The Government has filed a Response. (Docket Entry 156.) Petitioner, in turn, filed a Reply, entitled a Motion for Summary Judgment (Docket Entry 158), and a Memorandum

---

* This and all further cites to the record are to the criminal case. Additionally, the inmate locator on the Bureau of Prisons website indicates that Petitioner was released from imprisonment on November 30, 2012. *See* http:// www.bop.gov/inmateloc/. Petitioner—who attacks his conviction—filed the instant Motion while he was imprisoned. *See Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (prisoner must be "in custody" at the time his petition is filed). However, to the extent Petitioner attacks his sentence, his Motion should be denied as moot. *See Lane v. Williams*, 455 U.S. 624, 632 (1982) ("Since respondents elected only to attack their sentences, and since those sentences expired during the course of these proceedings, this case is moot.").

and two affidavits in support of the same (Docket Entries 159, 160, and 161). The matter is now prepared for a ruling. *See* Rule 8, Rules Governing § 2255 Proceedings.

## Petitioner's Claims

Petitioner's Motion raises three claims of ineffective assistance of counsel. First, Petitioner asserts that appellate counsel was ineffective for failing to brief and argue on appeal that the district court constructively amended the indictment through its jury instructions. (Docket Entry 151, Ground One.) Second, Petitioner contends appellate counsel was ineffective for failing to brief and argue on appeal that the district court abused its discretion by denying Petitioner's motion for judgment of acquittal. (*Id.*, Ground Two.) Third, Petitioner contends trial counsel was ineffective for failing to object to the Government's closing argument at trial and that appellate counsel was ineffective for failing to brief and argue this issue on appeal. (*Id.*, Ground Three.) As explained below, all iterations of Petitioner's ineffective assistance claims fail.

## Discussion

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing a habeas petitioner must come forward with some evidence that the claim might have merit), *abrog'n on other grounds recog'd, Yeatts v. Angelone*, 166 F.3d 255 (4th Cir.

2

1999). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). To establish prejudice, Petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Claims of ineffective assistance of counsel on appeal are also judged using the *Strickland* test. *See Lawrence v. Branker*, 517 F.3d 700, 708-09 (4th Cir. 2008). Appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 752-53 (1983); *see also Evans v. Thompson*, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal"). Ineffective assistance of appellate counsel can be shown by demonstrating that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Bell v. Jarvis*, 236 F.3d 149, 180 (4th Cir. 2000) (citation omitted).

## Ground One

Petitioner first faults appellate counsel for failing to argue on appeal that the Court impermissibly broadened the charges in the indictment in its jury instructions and that this amounted to a constructive amendment. (Docket Entry 151, Ground One.) As explained in greater detail below, this claim for relief lacks merit.[1]

---

[1] If Petitioner is also requesting that this Court consider all of the claims he attempted to raise on appeal with the Fourth Circuit by way of a proposed *pro se* supplemental brief, those claims would fail as well. (*See* Docket Entry 152 at 4-5.) First, claims raised and fully addressed on direct appeal cannot be reargued in a collateral proceeding. *See Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). Second, even assuming (as Petitioner contends) that the claims in his *pro se* supplemental brief were not fully considered by the Fourth Circuit, they all lack merit. In fact, the

3

As an initial matter, all that is required in an indictment is "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is constitutionally sufficient if it "apprises the accused of the charge against him so he can prepare his defense" and "enables the accused to plead the Double Jeopardy bar to reprosecution if he is later charged with the same offense." *United States v. American Waste Fibers Co., Inc.*, 809 F.2d 1044, 1046 (4th Cir. 1987). A "constructive amendment" or "fatal variance" of an indictment occurs "'[w]hen the government, through its presentation of evidence or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment.'" *United States v. Ashley*, 606 F.3d 135, 141 (4th Cir. 2010), *quoting United States v. Malloy*, 568 F.3d 166, 178 (4th Cir. 2009). "A constructive amendment is a fatal variance because the indictment is altered 'to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment.'" *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999), *quoting United States v. Schnabel*, 939

---

claims in Petitioner's *pro se* supplemental appellate brief are essentially duplicative of the claims he raises in his instant § 2255 motion and so would fail for the reasons described herein. If Petitioner is also asserting that the trial court failed to adequately consider the § 3355(a) factors during sentencing, that claim would fail because it is both moot (Petitioner has completed his sentence) and contradicted by the record (the Court did indeed consider the required factors). (*See* Docket Entry 117 at 58-69.) And, if Petitioner is contesting the loss amount resulting from his crimes, that claim would fail to because the sentencing transcript supports the district court's findings that the Government bore its burden in this regard. (Docket Entry 115 at 27-81; Docket Entry 116 at 5-26.) Last, if Petitioner is contending that the trial court erred by providing faulty, misleading, and/or confusing jury instructions, that claim must also fail. Petitioner fails to point to any meaningful shortcoming in the jury instructions, and a review of the jury instructions fails to reveal any. (*See* Docket Entry 112 at 199-220.) The Court has considered all the claims Petitioner raised (or tried to raise) on appeal, and the claims Petitioner raises now on collateral review. All Petitioner's claims lack merit.

F.2d 197, 203 (4th Cir. 1991). Any other variance "does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense." *Ashley*, 606 F.3d at 141, *quoting Malloy*, 568 F.3d at 178 (internal quotation marks omitted).

Here, Petitioner was convicted of repeated violations 26 U.S.C. § 7206(2), which expressly applies to "any person who":

> Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim or document . . . .

26 U.S.C. § 7206(2).

The twelve counts at issue charged that Petitioner "did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service of a U.S. Individual Income Tax Return, Form 1040 . . . ." (Docket Entry 1.) Each count then listed a different tax return and described the false entry on that return. (*Id.*) Prior to giving its final instructions, the Court alluded to Petitioner's contention that the electronically filed tax returns listed in the indictment were not signed by the taxpayers or by Petitioner as preparer and therefore did not constitute valid income tax returns. Since § 7206(2) also encompassed a false or fraudulent "other document" submitted to the Internal Revenue Service ("I.R.S."), the Court decided to include both the term "tax return" and

"other document" in describing the elements the Government had to prove. (Docket Entry 111 at 163-65.)

In its final jury instructions, the Court stated the following:

> 26 U.S.C. § 7206 (2) provides that: Any person - excuse me just a second. Any person who willfully aids or assists in or procures, counsels or advises the preparation or presentations under or in connection with any matter arising under the Internal Revenue laws of a return, affidavit, claim or other document which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is within the knowledge or consent of the person authorized or required to present such return, affidavit, claim or document, shall be guilty of an offense against the United States.
>
> In order to prove that the Defendant is guilty of the offenses charged in Count Two through Thirteen of the Indictment, the Government must prove each of the following elements beyond a reasonable doubt as to each offense alleged in the Indictment:
>
> First, that the Defendant aided or assisted in or procured, counseled or advised the preparation or presentation of a tax return or other document, and;
>
> Two, that the return or other document was prepared or presented under or in connection with a matter arising under the Internal Revenue laws, and;
>
> Three, that the return or other document was fraudulent and false as to any material matter, and;
>
> Four, that the Defendant acted willfully.

(Docket Entry 112 at 205-07.) These instructions properly track the elements of § 7206(2) that "(1) the defendant aided, assisted, or otherwise caused the preparation and presentation of a return; (2) that the return was fraudulent or false as to a material matter; and (3) the act

of the defendant was willful." *United States v. Aramony*, 88 F. 3d 1369, 1382 (4th Cir. 1996) (citation omitted).

Nevertheless, Petitioner's contention here is that the use of the term "other document" impermissibly expanded the scope of the indictment. However, § 7206(2) expressly includes the term "other document," and a tax return is also a document. As the Government correctly points out, § 7206(2) prohibits a defendant who "aids or assists in, or procures, counsels, or advises" and does not require that a defendant actually have signed or prepared the return to be subject to prosecution. *See United States v. Clark*, 577 F. 3d 273, 285 (5th Cir. 2009); *see also United States v. Smith*, 424 F. 3d 992, 1009 (9th Cir. 2005) ("Unsurprisingly, we do not require defendants engaged in tax schemes to physically "prepare" the tax returns to be found guilty of § 7206(2).").

Consequently, that Petitioner did not sign the returns as preparer did not make him any less culpable and—as explained in greater detail below—there was much evidence that he contacted and met with the taxpayers, obtained their Social Security numbers and other personal information necessary for filing, had the I.R.S. deposit tax refunds into bank accounts he controlled, and kept a significant portion of the refunds. When the I.R.S. searched Petitioner's residence, they even found copies of the returns listed in the indictment and other information relating to those returns. John De Powell, a records custodian with the I.R.S., identified the twelve returns in the indictment and testified that each one was an electronically filed income tax return that had been accepted by the I.R.S. (Docket Entry 110 at 65-114.) He essentially confirmed that the I.R.S. considered them to be valid income

tax returns and had authorized tax refunds to be issued for all of them. (*Id.*) De Powell explained that electronically filed income tax returns are not actually signed by the taxpayer but are submitted through use of a personal identification number selected either by the taxpayer or by the tax return preparer. (*Id.* at 59-60.) *See United States v. Williams*, 1998 WL 726761, at *3 (4th Cir. Oct.16, 1998) (unpublished) (harmless variance found in part because "IRS custodian of records testified that the electronically filed tax information was considered an electronically filed Form 1040").

The inclusion of the term "other document" along with the term "tax return" in the court's final jury instructions did not prejudice Petitioner, and he has failed to demonstrate any meaningful likelihood he was harmed. Nor would the IRS have approved and issued tax refunds if only "other documents," as opposed to actual tax returns, had been filed. Since Petitioner was provided with more than adequate notice of the offense charged and the indictment was sufficiently particular to protect him from multiple prosecutions for the same offense, any modest variance in the district court's final instructions resulting from the inclusion of the term "other document" was entirely harmless. There is no reason to believe the indictment was fatally deficient in the first instance and there was never a material variance between the indictment or instructions given and the evidence introduced at trial. Moreover, the Government contended at trial that this case involved false income tax returns.

In short, Petitioner's constructive amendment argument and all its permutations are without merit. Consequently, counsel cannot be ineffective for failing to investigate, raise, or

brief the issue with the Fourth Circuit or for assisting Petitioner to raise it himself.[2] Petitioner's argument fails.

## Ground Two

At the conclusion of the Government's evidence, and again after the jury verdict, counsel moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. (Docket Entry 111 at 145, 160; Docket Entry 112 at 141; Docket Entry 109 at 9-10.) Petitioner asserts that appellate counsel was ineffective for failing to contend on appeal that the district court abused its discretion by denying Petitioner's motion for judgment of acquittal. (Docket Entry 151, Ground Two.)

"A defendant challenging the sufficiency of the evidence to support his conviction bears a heavy burden." *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (quoting *United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995)) (internal quotation marks omitted). The verdict of a jury must be sustained "if, viewing the evidence in the light most favorable to the prosecution, the verdict is supported by substantial evidence." *United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006) (quoting *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir.1996) (en banc)) (internal quotation marks omitted). Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* In reviewing a case for substantial evidence, the Government receives "the benefit of all reasonable inferences from

---

[2] For all these reasons any argument that counsel was ineffective for failing to have the tax documents excluded from evidence because they were unsigned also fails. Nor does the record support any contention that trial counsel was unprepared for trial.

the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). "Reversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear." *Beidler*, 110 F.3d at 1067 (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)) (internal quotation marks omitted).

Here, as explained, the elements of § 7206 are that "(1) the defendant aided, assisted, or otherwise caused the preparation and presentation of a return; (2) that the return was fraudulent or false as to a material matter; and (3) the act of the defendant was willful." *Aramony*, 88 F. 3d at 1382. Among these elements, the Government therefore had to prove that Petitioner's actions were willful. *Id.* "Willfulness is defined as the voluntary and intentional violation of a known legal duty." *United States v. Abuhawwas*, 215 Fed. App'x 311 (4th Cir. 2007) (citing *Cheek v. United States*, 498 U.S. 192, 201 (1991)). Petitioner argues that this standard was not met because it was not enough for the Government merely to prove he knew of a general duty not to assist in or prepare false tax returns.

This argument lacks merit. It is true that in *Cheek*, the Supreme Court acknowledged an exception to the general rule in the American legal system that "ignorance of the law or a mistake of law is no defense to criminal prosecution" in the enforcement of the tax laws. *Cheek*, 498 U.S. at 199. Petitioner, however, has never claimed that he made an innocent mistake or was merely negligent in preparing the false tax returns in the indictment. Rather, Petitioner contends that the Government offered no evidence that he was the person who actually prepared or presented the false returns, that he knew the income of the taxpayers declared on the returns was false, or that he violated a known legal duty.

The Court here defined the term "willfully" in its jury instructions as follows:

> The term "willfully" as used in these instructions is defined as a voluntary, intentional violation of a known legal duty. An act or failure to act is willfully done if done voluntarily and intentionally and with the specific intent to do something the law forbids, that is to say, with a purpose either to disobey or disregard the law. The Defendant's conduct is not willful if he acted through negligence, inadvertence or mistake. Evidence which establishes only the Defendant made a mistake in judgment or was careless, does not establish fraudulent intent.

(Docket Entry 112 at 208.) This definition complies with *Cheek*.

Moreover, the evidence at trial demonstrated Petitioner acted willfully and further satisfied the other elements in question. Petitioner opened a tax preparation business called Refund Recovery Group in 2003 and obtained an identification number as a tax preparer from the I.R.S. (Docket Entry 110 at 54-59; Docket Entry 112 at 84, 87.) He established a website for his firm and hired several employees. (*Id.* at 92-93, 99.) Petitioner conceded at trial that his website incorrectly advertised that Refund Recovery Group was founded in 1985, referred to a non-existent New York branch in Buffalo, and indicated that Petitioner had served as a federal income tax consultant since 1985. (*Id.* at 100.) Petitioner met directly with clients in order to obtain their tax-related personal information and even handed out $20 bills in public housing projects to solicit business. (Docket Entry 110 at 198-99.)

Additionally, copies of up to 400 tax returns filed with the I.R.S. were found during a search of his residence, including all but one listed in the indictment, and De Powell confirmed that 217 different tax refunds for clients totaling $466,811 were deposited by the I.R.S. into Petitioner's account during 2004 alone. (Docket Entry 110 at 112; Docket Entry

111 at 89-90, 108.) The taxpayers on the returns listed in the indictment also testified that they met with Petitioner and provided him with Social Security numbers and other personal information. (Docket Entry 110 at 139-256; Docket Entry 111 at 7-84.) They also confirmed that they did not give Petitioner the self-employment information ultimately included by him on their Form Schedule C and used to qualify them for the Earned Income Tax Credit and a significant tax refund. (*Id.*) This is ample evidence of Petitioner' guilt.[3] Counsel was not deficient by not raising this issue on appeal and the Court did not err in denying Petitioner's Rule 29 motions.

### Ground Three

Last, Petitioner faults trial counsel for not objecting to statements by the Government during closing argument concerning (1) the prosecutor's belief in Petitioner's culpability without any basis in the evidence and the prosecutor's reference to evidence that was not on the record, (2) the truthfulness of taxpayer witnesses at trial, and (3) arguments made that Petitioner stole the identity of Ashley Pickett, one of the taxpayers. (Docket Entry 151, Ground Three; Docket Entry 152 at 54-61.) Petitioner asserts further that appellate counsel was ineffective for not raising the same points during the appeal. (*Id.*) None of these claims has merit.

---

[3] Petitioner also conceded at trial that all the refunds in the Indictment were sent to his business or bank account. (Docket Entry 112 at 101.)

At trial, the Government called as witnesses all of the taxpayers listed in the indictment regarding Counts Two through Thirteen.[4] As explained above, each testified that she met with Petitioner, understood that he would file a tax return for her, and provided him with Social Security numbers and other personal information. The taxpayers also testified that they never told Petitioner they had the businesses and self-employment income he reported for them on a Form Schedule C attached to their returns. During trial, counsel asked Petitioner about the testimony of the taxpayer witnesses: "So if they tell this jury that they didn't tell you income that you inputted was false, what is your recollection of how the information got on their tax returns?" (Docket Entry 112 at 96.) Petitioner responded that "If I did their tax return, I would say it's definitely a lie. I would say that it's not true." (*Id.*)

During closing argument, the Government responded directly to Petitioner's claim that the Government's witnesses had lied, stating:

> The ten ladies who talked to you were all truthful. They didn't have any reason to lie, contrary to his assertions on cross-examination . . . . They didn't even know each other, that's why I asked that question over and over again. . . . They never talked to each other about taxes. They never talked to each other about Marcell [sic] Thomas. These women didn't know each other. How could they make this up if they didn't know each other? And he selected these women, not the Government. These are people he went out in the housing projects and found. And he can't come in here and complain that they're not telling the truth because they're really his witnesses, they're the people he elected to file tax returns for.

---

[4] Counts Five and Nine both involved tax returns from different years for Mary A. Flippin, while Counts Six and Ten involved tax returns from different years for Sharina D. Rudd. (Docket Entry 1, Counts Five, Six, Nine, and Ten.)

*Id.* at 165-66. Later during closing argument, the prosecutor said: "It's not the taxpayers making this up as he would like you to believe, it's him making it up." (*Id.* at 169.)

Defense counsel did not object to any of these statements, and Petitioner now argues that this constituted improper vouching by the prosecutor and that his attorneys were ineffective for not objecting at trial and not raising it as an issue on appeal. It is true that Government counsel may not vouch or bolster the testimony of a Government witness during closing argument. *United States v. Sanchez*, 118 F. 3d 192, 198 (4th Cir. 1997). Vouching takes place "when a prosecutor indicates a personal belief in the credibility or honesty of a witness; bolstering is an implication by the government that the testimony of a witness is corroborated by evidence known to the government but not known to the jury." *Id.* While vouching and bolstering are inappropriate, "[i]mproper remarks during closing argument do not always mandate retrial. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (citation omitted). Where there is bolstering the Court "must next determine whether the comments prejudicially affected the defendant by considering (1) the degree to which the comments could have misled the jury; (2) whether the comments were isolated or extensive; (3) the strength of proof of guilt absent the inappropriate comments; and (4) whether the comments were deliberately made to divert the jury's attention." (*Id.*)

Here, Petitioner, in his direct testimony, accused the taxpayers of lying when they testified that they did not provide him with the amount of self-employment income he included on their tax returns. He therefore placed the truthfulness of these witnesses

14

directly at issue, and the statements by the Government during closing argument did not constitute vouching or prejudice the jury in any respect. The prosecutor merely argued that these witnesses had no motivation to lie, and he never insinuated that his comments were based on his own personal knowledge.

In other words, the arguments were invited by Petitioner's own testimony at trial. By way of an affidavit, Petitioner's trial counsel also notes that he did not object to the prosecutor's arguments on this point because he did not consider them improper since they "were directly related to [Petitioner's] statements on cross examination that the witnesses were lying on him." (Docket Entry 156, Attach. A.) Similarly, appellate counsel did not raise this issue before the Fourth Circuit, however, appellate counsel cannot be ineffective for failing to raise on appeal a meritless claim.

Petitioner also faults counsel's failure to object to the Government's statements in closing argument concerning one of the victim taxpayers, Ashley Pickett. Evidence was introduced that two false income tax returns had been filed in her name and that the income tax refunds for those returns were deposited directly into Petitioner's bank accounts. (Docket Entry 110 at 217-240, 222-228.) During her testimony, Pickett confirmed that she had no knowledge that Petitioner had ever filed the returns until she was shown copies by an I.R.S. agent and that she had never received the tax refunds for the returns. (*Id.* at 225-27.) Petitioner denied that Pickett had told the truth when he was questioned on cross-examination. (Docket Entry 112 at 109.) During closing argument, the prosecutor made the following statement:

> And except for Ashley Pickett, who didn't even know he was going to file two tax returns in her name. As a matter of fact, he stole her identity and filed two tax returns for $2800 in refunds, which she didn't get, although he denied it, said some very unflattering things about her, he kept that money. ...
>
> In the case of Ashley Pickett, a legitimate preparer would never steal a 19-year-old mother's identity and file two false tax returns without her knowledge and then keep two $1400 refunds that came in on them.

(Id. at 169-70. 179.)

Petitioner argues that this statement was improper vouching as to Pickett's veracity. He again contends his trial counsel and appellate counsel were ineffective for not challenging this portion of the Government's closing argument. Again, however, the Government's argument was proper, a conclusion also reached by counsel. (Docket Entry 156, Attach. A.) Filing a tax return without a taxpayer's knowledge or permission involves using someone's name and Social Security number without lawful authority and constitutes identity fraud or theft. Consequently, this claim lacks merit.

Petitioner contends further that the prosecutor improperly put before the jury his belief in Petitioner's culpability without any basis in the evidence and also referenced evidence that was not on the record. Here, however, Petitioner appears to again be contending that there was insufficient evidence to convict him. As explained above, this is not the case and it was not improper for the prosecutor to characterize the evidence on the record as demonstrating that Petitioner acted willfully and that he was indeed guilty.

Last, even if the closing arguments to which Petitioner points were improper—which is not the case—the remarks were at most harmless. As explained, there was considerable

evidence of Petitioner's guilt and no meaningful reason to believe but for those remarks this case would have resolved differently.

## Conclusion

For the reasons set forth above, Petitioner's Motion should be denied and this case should be dismissed. An evidentiary hearing is not warranted in this matter.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion to vacate, set aside or correct sentence (Docket Entry 151) be denied and that this action be dismissed.

**IT IS FURTHER RECOMMENDED** that Petitioner's Motion for Summary Judgment (Docket Entry 158) be denied.

Joe L. Webster
United States Magistrate Judge

December 15, 2014
Durham, North Carolina

17